UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,     :   Docket Nos. CR09-335 (RJL)
                              :
            Plaintiff,        :   May 7, 2010
                              :
                              :   2:00 p.m.
v.                            :
                              :
AMARO GONCALVES, JEANA        :
MUSHRIQUI, JOHN M. MUSHRIQUI, :
DAVID PAINTER, LEE M. WARES,  :
PANKESH PATEL, OFER PAZ,      :
ISRAEL WEISLER, MICHAEL SACKS,:
JOHN BENSON WIER, III, HAIM   :
GERI, YOCHANAN R. COHEN, SAUL :
MISHKIN, R. PATRICK CALDWELL, :
STEPHEN GERARD GIORDANELLA,   :
ANDREW BIGELOW, HELMIE        :
ASHIBLIE, DANIEL ALVIREZ, LEE :
ALLEN TOLLESON, JOHN GODSEY,  :
MARK MORALES, and JONATHAN    :
SPILLER,                      :
                              :
            Defendants.       :
. . . . . . . . . . . . . . . :


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiff:          HAROLD BOND WALTHER, ESQ.
                            LAURA PERKINS, ESQ.
                            MATTHEW SOLOMON, ESQ.
                            JOEY LIPTON, ESQ.
                            U.S. Department of Justice
                            1400 New York Avenue, N.W.
                            Third Floor
                            Washington, D.C.  20005

APPEARANCES (continued):

For the Defendant Goncalves:    JEREMY D. MARGOLIS, ESQ.
                                Loeb & Loeb, LLP
                                321 North Clark Street
                                Suite 2300
                                Chicago, Illinois  60654


For the Defendant John          DAVID STANLEY KRAKOFF, ESQ.
Mushriqui:                      Mayer Brown, LLP
                                1999 K Street, N.W.
                                Washington, D.C.  20006


For the Defendant Jeana
Mushriqui:                      CHARLES S. LEEPER, ESQ.
                                Drinker Biddle & Reath, LLP
                                1500 K Street, NW
                                Washington, DC 20005


For the Defendant David         PETER ROBERT ZEIDENBERG, ESQ.
Painter:                        DLA Piper, LLP
                                500 8th Street, N.W.
                                Washington, D.C.  20004


For the Defendant Lee M.
Wares:                          DANNY C. ONORATO, ESQ.
                                Onorato & Schertler, LLP
                                601 Pennsylvania Avenue, N.W.
                                Washington, D.C.  20004


For the Defendant Ofer Paz:     BRIAN HEBERLIG, ESQ.
                                Steptoe & Johnson, LLP
                                1330 Connecticut Avenue, N.W.
                                Washington, D.C.  20036


For the Defendant Michael       MICHAEL R. SKLAIRE, ESQ.
Sacks:                          Greenberg Traurig, LLP
                                1750 Tysons Corner Boulevard
                                McLean, Virginia 22102


(Appearances continued on the next page.)

Appearances (Continued.)


For the Defendant Yochannan
  Cohen:                          G. ALLEN DALE, ESQ.
                                  Law Offices of G. Allen Dale, Esq.
                                  601 Pennsylvania Avenue, NW
                                  Washington, DC 20004


For the Defendant Saul           BRITTNEY HORSTMA, ESQ.
Mishkin:                         201 South Biscayne Boulevard
                                  Suite 905
                                  Miami, Florida  33131


For the Defendant R. Patrick     KATHERINE JOANNE SEIKALY, ESQ.
Caldwell:                        Reed Smith
                                  1301 K Street, N.W.
                                  Suite 1100 East Tower
                                  Washington, D.C.  20005


For the Defendant Stephen        CHARLES P. SHORT, ESQ.
Gerard Giordanella:              Carlton Fields
                                  100 SE Second Street
                                  4000 International Place
                                  Miami, Florida  33131


For the Defendant Andrew         LAWRENCE JACOBS, ESQ.
Bigelow:                         CONNIE MEDEROS-JACOBS, ESQ.
                                  543 10th Street West
                                  Bradenton, Florida  34205


For the Defendant Helmie         CHARLES BURNHAM, ESQ.
Ashiblie:                        Burnham & Gorokhov, PLLC
                                  1739 Clarendon Boulevard
                                  Arlington, Virginia  22209


For the Defendant Lee Allen      JOSEPH S. PASSANISE, ESQ.
Tolleson:                        Law Offices of Dee Wampler Joseph
                                              Passanise
                                  2974 E. Battlefield
                                  Springfield, Missouri 65804

(Appearances continued on the next page.)

APPEARANCES (Continued.)

For the Defendant John            MICHAEL J. MADIGAN, ESQ.
Godsey:                           Orrick, Herrington & Sutcliffe
                                  1152 15th Street, N.W.
                                  Washington, D.C.  20005


For the Defendant Mark            STEVEN J. McCOOL, ESQ.
Morales:                          Mallon & McCool, LLC
                                  1776 K Street, N.W.
                                  Suite 200
                                  Washington, D.C.  20006


Court Reporter:                   PATTY ARTRIP GELS, RMR
                                  Official Court Reporter
                                  Room 4700-A, U.S. Courthouse
                                  Washington, D.C. 20001
                                  (202) 962-0200


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          P R O C E E D I N G S

2              COURTROOM DEPUTY:  Ladies and gentlemen, when the name

3      of your client is called, please stand and say present.  United

4      States of America versus Amaro Goncalves.  Would counsel

5      introduce themselves?

6              MR. WALTHER:  Good afternoon, your Honor.  For the

7      United States, Hank Walther, Laura Perkins, Matthew Solomon and

8      Joey Lipton.

9              THE COURT:  Welcome back.

10             MR. MARGOLIS: Good afternoon, your Honor, Jeremy

11     Margolis for Mr. Goncalves.

12             COURTROOM DEPUTY:  United States of America versus John

13     M.  Mushriqui.

14             MR. KRAKOFF:  Good afternoon, your Honor, David

15     Krakoff.

16             COURTROOM DEPUTY:  United States versus Jeana Mushriqui

17             MR. LEEPER: Good afternoon, your Honor, Charles Leeper.

18             THE COURT:  Welcome back.

19             COURTROOM DEPUTY: United States of American versus

20     David Painter.

21             MR. ZEIDENBERG:  Good afternoon, your Honor, Peter

22     Zeidenberg on behalf of Mr. Painter.

23             THE COURT:  Welcome back.

24             COURTROOM DEPUTY:  United States of America versus Lee

25     Wares.

:11:50

:11:57

:12:08

:12:15

:12:23

1    MR. ONORATO:  Good afternoon, your Honor. Danny Onorato

2  on behalf of Mr. Wares who is also present.

3    THE COURT:  Welcome back.

4    COURTROOM DEPUTY:  United States of America versus

:12:29  5  Ofer Paz.

6    MR. HEBERLIG:  Good afternoon, your Honor. Brian

7  Heberlig on behalf of Mr. Paz who is present.

8    COURTROOM DEPUTY:  United States of America versus

9  Michael Sacks.

:12:38  10    MR. SKLAIRE: Good afternoon, your Honor, Michael

11  Sklaire on behalf of Mr. Sacks who is present.

12    THE COURT:  Welcome back.

13    COURTROOM DEPUTY:  United States of America versus

14  Yochanan Cohen.

:12:46  15    MR. DALE:  Good afternoon, your Honor, Allen Dale on

16  behalf of Mr. Cohen.

17    THE COURT:  Welcome back.

18    COURTROOM DEPUTY:  United States of America versus Saul

19  Mishkin.

:12:52  20    MS. HORSTMA:  Good afternoon, your Honor, Brittney

21  Horstma on behalf of Mr. Mishkin.

22    THE COURT:  United States of America versus R. Patrick

23  Caldwell.

24    MS. SEIKALY: Katherine Seikaly from Reed Smith.

:12:59  25    THE COURT:  Welcome back.

1          COURTROOM DEPUTY:  United States of America versus

2     Stephen Giordanella.

3          MR. SHORT:  Charles Short for Stephen Giordanella.

4          THE COURT:  Welcome back.

:13:07    5          COURTROOM DEPUTY:  United States of America versus

6     Andrew Bigelow.

7          MR. JACOBS:  Lawrence Jacobs and Connie Mederos-Jacobs

8     and Mr. Bigelow is present.

9          THE COURT:  Welcome back.

:13:15    10          COURTROOM DEPUTY:  United States of America versus

11     Helmie Ashiblie.

12          MR. BURNHAM:  Good afternoon, your Honor, Charles Short

13     for Mr. Ashiblie who is present.

14          COURTROOM DEPUTY:  United States American versus Lee

:13:24    15     Allen Tolleson.

16          MR. PASSANISE:  Good afternoon, your Honor, Joe

17     Passanise on behalf of Mr. Tolleson.

18          THE COURT:  Welcome back.

19          COURTROOM DEPUTY:  United States of America versus John

:13:35    20     Godsey.

21          MR. MADIGAN: Good afternoon, your Honor, Michael

22     Madigan on behalf of Mr. Godsey.

23          THE COURT:  Welcome back, Mr. Madigan.

24          COURTROOM DEPUTY:  United States of America versus Mark

:13:41    25     Morales.

1        MR. McCOOL:  Good afternoon, your Honor, Steven McCool

2  on behalf of Mr. Morales.

3        THE COURT:  Welcome back.  All right, counsel, welcome

4  back to one and all.  We are here for the Motions Hearing today

:13:52   5  on the Speedy Trial Act Motion that the Government filed.  Now,

6  from a housekeeping point of view, let me start off with this.

7  I was sorry to miss our last together, but most regrettably

8  Mother Nature had another idea in mind and I wasn't able to be

9  here and I apologize for any inconvenience to you all.  I

:14:14  10  believe one of our Magistrate Judges ably filled in on short

11  notice, I might add, and I am very thankful for that.

12        Lest there be any question in anyone's mind, obviously

13  the original bond conditions unless they have been since

14  modified by this Court, and I have modified a number of them

:14:31  15  based on consent of the parties, unless they have been modified

16  with my permission and by consent of the Government, then they

17  remain intact from the original  bond hearings that were done in

18  the case up to the present.

19        I am stating the obvious, but I thought I would at

:14:48  20  least make sure that was clear on the record lest there be any

21  confusion on that.

22        Now, since our last get-together, a number of the

23  parties have decided for whatever reason, and that's their

24  prerogative, to withdraw their opposition to the Government's

:15:03  25  Motion For Exception under the Speedy Trial Act due to the

1    complexity of the case, and I thought it makes sense at least

2    initially to give those that have made a decision to just

3    acknowledge on the record that they are no longer opposing the

4    Government's Motion and then, as to the remainders, I understand

:15:21    5    that some of those remaining if not all want to at least

6    acknowledge on the record their continued opposition or perhaps

7    make some kind of an argument at that point; but that would, of

8    course, succeed the Government's argument because it is the

9    Government's Motion.

:15:39    10    So I thought I would at least start initially with

11    those who have decided to withdraw and there is a number of them

12    of the 22 Defendants, I think a fair number, I would estimate

13    maybe at 8 or 10, but it could be a little different, have

14    decided to withdraw their opposition.  So I want to give them a

:15:55    15    chance to do that.

16    So why don't you all, those of you who have withdrawn

17    your opposition, come forward and just note it for the record

18    just quickly.  Just state the name of your client and your name,

19    of course your name, and the name of your client.  Thank you

:16:11    20    very much, counsel.

21    MR. ZEIDENBERG:  Good afternoon, your Honor, Peter

22    Zeidenberg on behalf of Mr. Painter.  We would be withdrawing

23    our objection.

24    THE COURT:  Thank you very much.

:16:20    25    MR. ONORATO:  Your Honor, Danny Onorato on behalf

Mr. Wares.  I have consulted with Mr. Wares.  He understands the

Speedy Trial Act and he waives his right to have a speedy trial

in this matter.

THE COURT:  Thank you, Mr. Onorato.  Thank you.

MR. HEBERLIG:  Good afternoon, your Honor, Brian

Heberlig on behalf of Ofer Paz, and we also withdraw our

opposition to the Motion.

THE COURT:  Very good.  Thank you, sir.

MR. MADIGAN:  Good afternoon, your Honor, Michael

Madigan on behalf of Mr. Godsey.  We also withdraw our

opposition.

THE COURT:  Thank you, Mr. Madigan.

MR. McCOOL:  Good afternoon, your Honor, Steven McCool

on behalf of Mark Morales.  We filed a notice with the Court

this morning that we would seek to withdraw our opposition.  I

have consulted with my client.

THE COURT:  Thank you very much.

MR. McCOOL:  Your Honor, may I be excused or should I

remain for the --

THE COURT:  It is up to you.  I mean you are welcome to

say if you would like. It is up to you and your client.

MR. McCOOL:  I would like to take care of some other

matters back at the office if I may.

THE COURT:  Go for it.

MR. McCOOL:  Thank you so much.

1          THE COURT: Very good.

2          MR. JACOBS:  Lawrence Jacobs on behalf of Mr. Bigelow,

3    your Honor. I have not filed anything in writing but after

4    discussing the matter with my client and after the Superseding

:17:25    5    Indictment, we are going to withdraw our objection.

6          THE COURT:  Very good.  Thank you, sir.

7          MR. PASSANISE:  Joe Passanise on behalf of

8    Mr. Tolleson, your Honor. We did not file an Objection Motion

9    and I at this time we are -- I guess we don't have anything to

:17:40    10   withdraw, but I just wanted for the record to be clear that we

11   don't oppose the Government's Motion.

12         THE COURT:  Very good.

13         MR. PASSANISE:  And, your Honor, is it my understanding

14   we can be excused?

:17:47    15         THE COURT:  Yes. That would be equally applicable to

16   any and all counsel who are opposing.

17         MR. PASSANISE:  Thank you,  your Honor.

18         THE COURT: You are welcome.

19         MR. SKLAIRE:  Good afternoon, your Honor, Michael

:17:56    20   Sklaire on behalf of Michael Sacks who has provided the Court

21   with notice that he withdraws his opposition.

22         THE COURT:  Very good.  Thank you very much.  All

23   right.  Counsel, then the Court's preference would be to hear

24   first from the Government in support of its Motion and then the

:18:11    25   defense counsel who are on behalf of their clients continuing to

1    object will be welcome to come up and put on the record whatever

2    comments they would like to put, or arguments, they would like

3    to put on the record under the circumstances.  Mr. Walther.

4              MR. WALTHER:  Thank you, your Honor.  Before I begin, I

:18:27    5    wanted to clarify.  I believe that in addition to the Defendants

6    who just withdraw their opposition that there was no opposition

7    from Defendant Alvirez, Defendant Spiller, and I believe

8    Defendant Patel which would make that three more.

9              THE COURT:  All right.

:18:46   10              MR. WALTHER:  Your Honor, on March 10, 2010, we filed a

11   Motion to designate this case as complex for purposes of the

12   Speedy Trial Act.  The act itself provides that the Court may

13   toll the act on its own Motion or on request by either party on

14   the basis that the ends of justice is served by taking such

:19:10   15   action outweigh the best interests of the public and the

16   Defendant in the speedy trial.

17              The act actually provides a non exhaustive list of

18   considerations or factors that the Court can consider in

19   deciding whether such a tolling is appropriate.  The three that

:19:27   20   are specifically listed in the act are the number of Defendants

21   in the case, the nature of the prosecution, and the existence of

22   novel questions of fact or law.

23              THE COURT:  Well, let me ask you to pause a second

24   there, although I may be anticipating where you are going, but

:19:47   25   just for the sake of perhaps efficiency, when this case started

1    down the road or we have been on now since February, it was 16

2    individual indictments of 22 Defendants in total; but since then

3    the Government has rethought its prosecution and reconstituted

4    its case by entering a Superseding Indictment where all 22

:20:13   5    Defendants are under one umbrella, so to speak.

6         It is that number of Defendants in one indictment, is

7    it not, Mr. Walther, that is the consideration that the Court

8    should be focusing on with regard to this particular Motion?

9         MR. WALTHER:  That's correct.  It is our position that

:20:28   10   this case is one indictment now sitting here today with 22

11   Defendants and, again, obviously with respect to the first

12   factor that is in the act, the number of Defendants, the

13   appropriate number to consider is the number in the indictment

14   which is 22 which is obviously a large case.

:20:45   15        THE COURT:  Now, that kind of an indictment which, of

16   course, is not common in this District, probably is not common

17   in any District, poses special challenges to the Court not the

18   least of which is how do you possibly divide it up for the

19   purpose of trial because no Judge try, no jury could preside and

:21:05   20   participate in a trial with 22 Defendants.  You couldn't keep

21   the evidence sorted out, and I think all the defense counsel

22   appreciate that.  That's a given, frankly.

23        So one of the complexities that this case potentially

24   adds to the Judge's job of running it is figuring out how to

:21:23   25   divide it up.  Wouldn't that be a fair characterization?

1    MR. WALTHER:  We agree, your Honor.  In fact, at the

2    last status conference, if you recall, that's one of the issues

3    that the Court asked about and that Mr. Krakoff spoke about on

4    behalf of the Defendants; and I think he indicated all of the

:21:38    5    host of Motions that the defense was considering bringing or

6    would bring with respect to the indictment itself as charged to

7    potentially attack the indictment, but separately to attack the

8    Government's proposed ways of splitting up the indictment.

9    So I think there are two separate issues, both of which

:21:58    10    are appropriate to consider in determining whether to toll the

11    Speedy Trial clock and designate the case complex.

12    THE COURT:  Very good.

13    MR. WALTHER:  With respect to the second prong of the

14    nature of the prosecution, as the Court is aware, this case was

:22:13    15    as a result of a two-and-a-half year undercover investigation

16    and in addition to a whole host of videotapes and audiotapes

17    related to the undercover, the case relates to the charged

18    conduct in the transaction that's in the indictment; and as the

19    Court is now aware, there is a whole host of other conduct with

:22:35    20    respect to some Defendants that involves potential bribery and

21    potential other FCPA issues and 404(b) issues which obviously

22    increases the complexity of the case.

23    And also there has been voluminous discovery, and the

24    defense has asked for a whole lot and they have received a whole

:22:54    25    lot.  In sitting here today, the Government has produced over

1    5,000 telephone calls, recorded telephone calls from the

2    undercover, and these are what we call the substantive telephone

3    call sessions where there is significant discussion back and

4    forth; but in addition to that the defense has asked for and has

:23:14    5    now received calls where there is no communication like you get

6    an answering machine, for example, or there is no connection.

7    If you count those call sessions, the Government has produced

8    over 20,000 call sessions.

9         In addition to that, the Government has produced over

:23:32    10    600 recorded meetings that involve audiotape and videotape.  The

11    Government has produced at the Defendant's request all of the

12    search warrant documents that we discussed over a period of

13    months.  That totals approximately 242,000 pages of documents.

14         The Government has also produced at the request of the

:23:54    15    defense over 6,000 pages of documents related to Individual One

16    and the undercover FBI operation that led to this indictment.

17    In addition to all those things, your Honor, the defense

18    continues to ask for a whole host of other categories of

19    documents, some of which we are continuing to provide and some

:24:14    20    of which we just disagree that they are entitled to; and I am

21    sure we will litigate those at the appropriate time, but I think

22    the takeaway from this second prong of the nature of the

23    prosecution is that there was on a long investigation, the

24    defense has asked for a lot of materials, we have provided a lot

:24:30    25    of materials, and they are continuing to ask for more.

When you are talking about these numbers and all of these issues, it is hard to fathom how that doesn't warrant the type of complexity anticipated in the Speedy Trial Act.

The third prong and the final prong that's explicitly discussed in the Speedy Trial Act are the novel questions of law, and I won't go through all of the issues the defense have raised with the Court over the last several months; but if you just listen to what's been said in the last two status conferences by the defense, I think it is pretty clear that there are a whole host of issues that they at least anticipate litigating.

The Defendants have stated in court on several occasions that they believe that the Government has produced too many documents and that they want to file Motions saying that we need to go through and identify for them what's really important among the documents that they asked for.  In the same breath, the defense has said that the Government is withholding a whole host of documents that they are entitled to and that they anticipate filing a host of Motions with respect to that, including things like communications between attorneys for cooperators and the Justice Department in connection with plea negotiations, documents produced by Individual One's company in connection with a separate internal investigation, and internal FBI communications that don't relate to the management of Individual One, but that just might relate to communications

1    between case agents.

2         Those are just a few issues that the defense has

3    already raised and at least has stated that they plan on

4    litigating.

5         THE COURT:  They have also said that, I believe that

6    the record would reflect, that they have also said that this

7    case raises some novel questions with regard to entrapment by

8    the FBI agent and the Individual One who is the cooperator

9    working closely with the FBI agent in all of these cases.  I

10   think they have said that.

11        MR. WALTHER:  You anticipated where I was going next

12   because in addition to all of those discovery issues, there have

13   been more substantive, core legal issues that relate to the

14   Indictment.  And those include, as your Honor said, the

15   entrapment issues, the issues related to a conspiracy and

16   whether a conspiracy actually existed and, if so, how big it was

17   or how small it was, a host of FCPA issues related to whether

18   the act allows for the prosecution of a case where there is no

19   real Government official.  I mean these are all just things the

20   defense has brought up and told the Court that they plan on

21   litigating or at least considering litigating.

22        At the last status conference, which was the first

23   status conference after the Superseding Indictment, the Court

24   asked some questions about what Motions the defense anticipated

25   bringing with respect to the newly formed indictment; and just

with respect the that one issue, Mr. Krakoff stated that the

Defendants have Rule 8 issues, they have joinder issues, they

have severance issues, they have potential Motions To Dismiss,

and, if you really want to know the defense's view on this

issue, I think Mr. Krakoff said at the last status conference,

he said should these Defendants be tried in the same group or

this indictment at all?

And that is a complex issue that we considered among

ourselves.  It is going to require some pretty substantial

research and pleading, and I think that's an example of at least

what the defense thinks and what the defense plans on doing

which is they want to attack the indictment which is their

right.

We agree with the Court.  If you remember at the last

status conference after Mr. Krakoff described all the Motions

that they were considering bringing, kind of the litany of

discovery issues and substantive legal issues, the Court said

this case almost cries out for being a complex case.  The

Government agrees.

Our view is at the end of the day there is really two

ways you can proceed leaving aside the Court's calendar which is

a completely  different issue, but the two ways you can proceed

are either the Defendants are actually going to litigate all the

things that they have been  saying for the last number of months

they are going to litigate, which is a whole lot, and which

1   means this is a complex case; or they don't want to litigate all

2   those issues and they just want their speedy trial which is

3   their right in which case, notwithstanding the Court's schedule,

4   schedule trials, but you can't have it both ways.  It is one or

:28:58   5   the other.

6        Either there are all of these legal issues that rise to

7   the level of complexity under the Speedy Trial Act or there

8   aren't and they want a Speedy Trial Act, but you can't get the

9   benefit of both.  It is one or the other.

:29:09   10       And it is the Government's view that based on all of

11  those reasons that we just described, this is a complex case,

12  that it should be placed on the complex calendar, and that the

13  Government's Motion to exclude time under the Speedy Trial Act

14  should be granted.

:29:27   15       THE COURT:  Thank you, Mr. Walther.

16       MR. WALTHER:  Thank you.

17       THE COURT:  Thank you.  I understand the defense

18  doesn't have any one specific spokesperson to sort of address

19  all the issues on behalf of the defense so I think it is just

:29:40   20  easiest to just go in whatever order you would like to go in,

21  frankly, and state on the record whatever arguments you have or

22  whatever opposition you would like to articulate to the argument

23  that's been presented and the pleadings that have been presented

24  by the Government.

:29:57   25       So you are welcome to proceed in whatever order you

1    would like among yourselves.  Here comes someone here.  Just for

2    the record, make sure you state your name and your client's name

3    before you begin speaking.  Thank you very much, sir.

4              MR. MARGOLIS:  Good afternoon again, your Honor, Jeremy

:30:16    5    Margolis on behalf of Amaro Goncalves.  I mean I thought I

6    learned in the Army never volunteer.  I will be real brief, your

7    Honor.  I appreciate your time.

8              On behalf of Amaro, we, of course, rest on the written

9    pleadings --

:30:31   10              THE COURT:  Of course.

11              MR. MARGOLIS:  -- filed on behalf of the -- well, which

12    we have adopted and/or filed individually.  I just want to make

13    a couple of brief points.  The first is --

14              THE COURT:  Before you start, I probably should make

:30:44   15    one other comment that would apply to all the defense counsel.

16    Since most of your pleadings were filed before the Superseding

17    Indictment, you may have some supplementary comment to make in

18    the aftermath of the Superseding Indictment so I am just stating

19    the obvious.  I am not telling you what to do, but I just want

:31:03   20    to make that obvious point.  Go ahead.

21              MR. MARGOLIS:  Thank you, your Honor.  The first point

22    I would like to make is really a request that you consider the

23    Motion with respect to Amaro Goncalves individually.  The

24    Government uses the word the Defendants and they with great

:31:21   25    frequency, but we have heard nothing about Amaro Goncalves.  He

wasn't mentioned in the Government's Motion other than in the

caption or the footnote at the  bottom of page one just

identifying him as one of these people that is included in their

prayer for relief, but nothing about his individual

circumstances which renders his case complex.

When I stood before you for the very first time after

our initial appearance, I said it was essentially a simple case

and the case which in response to I think your observations from

the bench having read the initial 16 indictments, the case with

which we are now faced, is really the same case insofar as

Mr. Goncalves is concerned.

In fact, Mr. Walther described it as essentially the

same case twice in the hearing on April 21st.  For whatever

reasons, the Government has chosen to supersede and take those

16 separate cases, put them into one; but with respect to

Mr. Goncalves and with respect to the evidence against him and

with respect to the complexity of the case that he is facing, it

is exactly the same.

I said at the first appearance it was simple.  Now that

we have had an opportunity to actually review the discovery, I

repeat against Amaro this is a very simple case.  He has an

arrest 302, there are two recorded meetings on this subject, the

salient portions of which are extraordinarily short.  There are

four e-mails.  There are two wire transfers sent to and from a

Government account.  There is a handful of phone calls most of

1    which are messages left from Mr. Bistrong saying call me back,

2    and the documentary discovery is 56 documents which includes

3    duplicates which is about the size of my folder I brought up

4    here to Court which is the statute, the hearing from the 21st

:33:10    5    and the Motions filed on this very issue.

6        The case against Amaro Goncalves is not a complex case

7    by any means.  There is nothing we have seen in the discovery

8    which exists an interaction between these claimed

9    co-conspirators.  It Amaro, a couple phone calls, a couple brief

:33:30   10    meetings with an informant and two undercover FBI agents, and

11    that's it.

12        So we ask, your Honor, that you consider the evidence

13    against Mr. Goncalves and the facts and circumstances with

14    respect to Mr. Goncalves individually and find this is not a

:33:43   15    complex case so the statute should not be tolled.  Thank you.

16        THE COURT:  How about the Government's theory, at least

17    as I understand it, is that there is an overarching single

18    conspiracy that all of the Defendants participated in or were a

19    part of; and so if that's their theory as is reflected in the

:34:03   20    Superseding Indictment, they are going to have to prove that

21    obviously and so, as it relates to not only your client but the

22    other individual spokes, so to speak, of the wheel, they are

23    going to have to carry that burden to the jury's satisfaction

24    and obviously to get over Rule 29.

:34:22   25        So the proving of that and the evidence that it takes

to prove it and the discovery that relates to it, that doesn't

get dissipated even though as to your specific client, does it,

even though as to your specific client it is a subset or a

smaller subset of evidence, does it?

MR. MARGOLIS:  Your Honor, the evidence that the

Government would have used to prove this supposed conspiracy

against Mr. Goncalves in the first indictment in which he stood

alone is no different than the evidence that they will

presumably attempt to present against him in the Superseding

Indictment which just lumps all these people together.

We have been through the discovery as best we can and

we simply do not see any evidence of interaction on this subject

between Mr. Goncalves and these now claimed codefendants, and we

think that when the Court applies the case law under the act to

individual Defendants, the question needs to be decided on a

Defendant-by-Defendant basis.

As to their proof against Mr. Goncalves, we told you

when we first appeared before you on the sole case I thought it

was going to be a couple day trial.  Some people have different

views of how they might meet the evidence.  If Mr. Bistrong were

called, for example, someone might choose to roll their eyes in

front of the jury and have no questions because he is not worthy

of a question.  Others might skillfully and artfully

cross-examine him for a week.

There is a famous  Judge in Chicago, he passed away, he

was a Judge and a practicing lawyer, Eugene Pincham, it was said

that Gene could cross-examine the skin off a cat, and in my past

life former Chief Judge Kocoras who was then  an Assistant tried

a police corruption case and this informant Bodey, who was a

pretty vial human being, and Gene cross-examined him for in

excess of a week and I saw him ask the same question about 100

times appropriately in different fashions, different facets of

the same question; and the Tribune headline after this witness

finally was called off the stand was: "Bodey Ends His Misery."

It didn't make the case more complex.  The jury

acquitted.  Everyone in the courtroom was entertained, but I

think Gene probably could have rolled his eyes to the jury and

sent the same message and saved a week. But whether it is

shorter or longer, it wasn't complex.

The evidence against Mr. Goncalves is really minor,

limited, and there is nothing about it that suggests that this

is a case which would call for the Court to toll the Speedy

Trial Act in its entirety.  That's our position.

THE COURT:  Thank you so much.

MR. MARGOLIS:  Have a good week, your Honor.

THE COURT:  Thank you, Mr. Margolis.  Who would be

next?

MR. LEEPER:  Your Honor, I can speak from here. On

behalf of my client --

THE COURT:  Well, we have a microphone issue.  We have

1    a tape-recording system, counsel, that if you don't speak from

2    the microphone, it won't pick it up.

3            MR. LEEPER:  Charles Leeper on behalf of Jeana

4    Mushriqui.  We are resting on our papers.

:37:22    5            THE COURT:  Very good. Thank you, Mr. Leeper.

6            MR. LEEPER:  Thank you.

7            THE COURT:  Mr. Krakoff.

8            MR. KRAKOFF:  David Krakoff on behalf of John

9    Mushriqui, and we also are resting on our papers, your Honor.

:37:38   10            THE COURT:  Thank you, sir.

11            MR. KRAKOFF:  Thank you.

12            MS. SEIKALY:  Katherine Seikaly on behalf Patrick

13    Caldwell.  We also rest on our papers and Mr. Margolis' argument

14    we will adopt them please.  Thank you.

:37:56   15            THE COURT:  Thank you.

16            MR. DALE:  Good afternoon, your Honor, Allen Dale on

17    behalf of Mr. Cohen.  Your Honor, we rest on our papers.  I also

18    would adopt the arguments just made by Mr. Margolis and just

19    simply add to that that for Mr. Cohen and I expect for most of

:38:15   20    the people here, each individual case is just as simple.  Same

21    number of meetings, the same number of phone calls; and that

22    doesn't make it complex.

23            THE COURT:  Thank you.

24            MR. SHORT:  Good afternoon, your Honor. Charles Short

:38:36   25    along with Stephen Bronis and Paul Calli.  I represent Stephen

1    Giordanella.  We filed our own response.  We did not join in the

2    general group response.  Our response raises issues with regards

3    to the lack of complexity against Mr. Giordanella that we

4    believe are unique to him.  We will rest on our papers except to

:38:55    5    highlight four things.

6         First, Mr. Giordanella did not attend the Shot Show in

7    Las Vegas despite Bistrong requesting that he did.  Mr.

8    Giordanella did not attend the dinner at Clyde's despite

9    Bistrong requesting his presence.  The substantive meeting and

:39:14    10    phone calls that are of evidentiary value between Bistrong and

11    Mr. Giordanella are really de minimis and not in any way

12    overwhelming.

13         And, finally, Mr. Giordanella does not know nor has he

14    done business with those with whom the Government purports to

:39:31    15    group him and neither does he know and neither has he done

16    business with many of the individuals named in the indictment.

17    Thank you, your Honor.

18         THE COURT:  Thank you very much.

19         MR. BURNHAM:  Good afternoon, your Honor, Charles

:39:54    20    Burnham for Helmie Ashiblie.  We will rest on our papers.

21         THE COURT:  Very good.  Thank you, sir.

22         MS. HORSTMA:  Good afternoon, your Honor, Brittney

23    Horstma on behalf of Saul Mishkin.  I would just like to -- we

24    rest on the papers with one addition. I  adopt the arguments

:40:18    25    that counsel have already made and I want to make a couple

1    points specific to Mr. Mishkin.

2         The one issue is that the Government has stated that

3    the complexity of this case largely stems from the one large

4    conspiracy.  If it is not one large conspiracy, the 500,000

:40:37   5    phone calls, videos, all of that evidence is not relevant to the

6    case against Mr. Mishkin.  So you have to start, I believe, from

7    the point of is it one large conspiracy?

8         The only thing the Government has alleged in this new

9    indictment is that they conspired with each other, but they have

:40:55   10   again failed to list anything that any overt act or any specific

11   phone call or anything that links all of the Defendants together

12   which was argued on the papers.

13        I think the most important piece of the Government's

14   evidence that they have turned over so far is from Richard

:41:15   15   Bistrong himself.  My client has a specific defense in this

16   case, an advice of counsel defense.  When he is having a

17   discussion with  Mr. Bistrong about how his attorneys have

18   advised him that he cannot do the deal how it is structured  and

19   he says he is going to stop the deal and not do it, Richard

:41:33   20   Bistrong gets very angry with him; and for almost an hour

21   berates him about how this is, you know, he shouldn't tell

22   anybody else about what his lawyer has said and he says quote --

23   you know, this is isn't part of the exact quote -- but he talks

24   about how he shouldn't contact any of the other Defendants, that

:41:52   25   he could possibly look up or find out about because quote "one

1   thing has nothing to do with another."

2         That's the Government's main witness in this case, the

3   one that created this so-called conspiracy, and his response to

4   my client about this deal is that one deal with one of these

:42:12   5   other Defendants has nothing to do with my client.  And I think

6   that that's the biggest, the best way to highlight that.  Just

7   because the Government in their indictment has said that this is

8   one big conspiracy, they are asking this Court to waive an

9   individual's right to a Speedy Trial because they have said it

:42:33   10   in one line that this is a conspiracy but have failed through

11   any of the discovery or to allege any overt acts whatsoever.

12         So, you know, regardless the phone calls whether

13   they are relevant or not, my client's preparation for trial also

14   is the advice of counsel so it doesn't necessitate challenging a

:42:53   15   lot of those things necessarily, those phone calls.  It relates

16   to just a small few conversations.  Thank you, your Honor.

17         THE COURT:  Thank you very much.  Anyone else for the

18   defense? I think everybody has had a chance.  Nobody is getting

19   so up so it looks to me like everybody has at this point had a

:43:18   20   chance to be heard.

21         Now, of course we have other Motions that are in the

22   process of being filed, and there will have to be other hearings

23   undoubtedly at some point with regard to those.  I think the

24   next filing date is the 14th; is that correct, Mr. Krakoff? It

:43:40   25   looks like he is nodding in agreement.  Does anybody have a

1   different recollection? I think that's pretty much it.

2       I can't say for sure that I will have ruled on this by

3   then, but certainly I might have.  I certainly will try to,

4   let's put it that way.  June 1st, of course, is also another

:44:03   5   deadline that relates to production materials that were obtained

6   from the searches over in the United Kingdom so that's under way

7   at the moment.

8       I think at that point I probably would be setting some

9   kind of an argument sometime in early June that relates to the

:44:26   10   filings on the 14th.  So it would seem to me at this point it

11   makes most sense for you all to keep working as you are on what

12   you are working on rather than getting distracted with any oral

13   arguments between now and June 1st and then perhaps the week

14   of -- well, we have a Judicial Conference the week of June 7th,

:44:52   15   but maybe that following week if you could look at your

16   calendars, the week of June 14th, we could have a hearing on any

17   existing Motions at that point.

18       And I will wait to see how voluminous they are and how

19   much time will need to be taken.  I am going to block a couple

:45:16   20   of hours for the moment, but it may turn out we need more than

21   that in a given situation.

22       Would counsel be available the 17th perhaps of June? It

23   is a Thursday.

24       MR. WALTHER:  That's fine for us, your Honor.

:45:31   25       THE COURT:  Does that work for the Government?  Are

1    defense counsel generally available that afternoon? We will

2    start at two and then I will block until five, and then we might

3    not need all three hours but I just don't know how voluminous

4    things are going to be and how many things we are going to need

:45:47    5    to cover that day.

6          Certainly by then I will have ruled on the Speedy Trial

7    Act Motion.  As long as these other Motions are pending, of

8    course, the Speedy Trial Act has been tolled for now anyway.  Go

9    ahead, Mr. Walther.

:45:59    10          MR. WALTHER:  I just wanted to raise one matter, your

11    Honor.  We realized this morning when we went back to our

12    original Motion that it predated the superseder.  So our plan,

13    as long as it is okay with the Court, is we attached an order to

14    that, but obviously the language is different now.  We will

:46:15    15    submit a new order for the Court's consideration.

16          THE COURT:  That's fine.  Can you give me while you are

17    here, since we are pretty much done for today's arguments I

18    think, any kind of an update on where discovery is in general

19    terms? If there is anything currently still being worked on or

:46:32    20    anything you are expecting to be -- other than the UK documents.

21          MR. WALTHER:  Right.

22          THE COURT:  That's still weeks away, but are there any

23    other developments that might be worth noting on the record for

24    today?

:46:41    25          MR. WALTHER:  I don't know that there are particular

developments that are worth noting.  I mean I know we have

continued to have conversations with defense counsel, and I

think we have certainly continued to produce documents.  I can't

tell you off the top of my head when the last batch we produced,

but we are regularly producing additional documents some of

which we don't think we have to, but we are doing it anyway,

some of which we are turning over because we have been asked to,

some we just have disagreements; and it is going to lead to the

filing, I am sure, to the filing of Motions, but it is an

ongoing dialogue that we are still having.

THE COURT:  Okay.  Very good.  I think, counsel, in

anticipation of the 17th hearing if you think as of that date

there is a need to file any further Motions, you should let me

know about it and so I can set a schedule on that occasion going

forward into the summer so we know where we stand in terms of

deadlines and any, you know, oppositions and replies and things

that need to be worked out in those first few months of the

summer, especially mindful of that time of year when people have

committed to other locations for certain things.

So I want to make sure we don't get in a situation

where we don't have people available for a hearing or something

like that.  So I would ask you all to be thinking ahead a little

bit between now and June 17th as to where you think -- what, if

any, other Motions you think may be necessary to be filed under

the circumstances.

1       Other than that, do any of the defense counsel have

2  anything further to put on the record that they need to?

3       MR. DALE:  Allen Dale again, your Honor, on behalf of

4  Mr. Cohen.  Your Honor, the Government has been gracious enough

:48:32      5  to not oppose an oral Motion for the return of my client's

6  wife's passport, and I have an order for the Court if you wish

7  to know why.

8       THE COURT:  If it is a consent Motion, I am sure I am

9  going to have no problem with it.  Thank you, sir.

:49:07      10       MR. DALE:  Thank you.

11       THE COURT: Yes, ma'am.

12       MS. MEDEROS-JACOBS:  Good afternoon,  your Honor,

13  Connie Mederos-Jacobs on behalf of Mr. Bigelow.  This is really

14  a housekeeping matter, but I felt it important enough to get it

:49:18      15  on the record.  My client reports to a Federal Probation Officer

16  that's located in Tampa, Florida, which is about an hour north

17  of Sarasota where my client resides.

18       There have been occasions where the Probation Officer

19  has made, of course, surprise visits which are -- they are

:49:34      20  understood.  However, my client wasn't at home.  On at least two

21  occasions, the Probation Officer has left a folded note which

22  could easily have been blown away off the door and at one

23  occasion handed it to a realtor who was there conducting an

24  event with other realtors making public what otherwise would

:49:52      25  have been a private matter.

1    When my client has tried to contact the Probation

2    Officer, he is not privy to the Probation Officer's cell phone

3    number.  However, when he has tried to reach him, he is

4    instructed to just FAX him a note to that effect that he has

:50:05   5    tried to communicate and report. Twice my client has discovered

6    that once the FAX machine wasn't plugged in, the second time it

7    was out of paper.  If it hadn't been for my client following up

8    and insisting that communication be established between himself

9    and the Probation Officer,  he could have been written up or

:50:22   10   been violated, and he is extremely concerned that that not

11   happen.

12   So I suggested to him to permit me to get it on the

13   record that he has made efforts.  Sometimes they are not

14   forthcoming and sometimes not very fruitful; but if there is any

:50:34   15   suggestion at all that the Court or the Government could have

16   that we can address it before it becomes a serious issue with

17   the Probation Officer in particular, another avenue, he doesn't

18   mind reporting directly to the Government saying, by the way,

19   here is a copy of the FAX that I sent to my Probation Officer.

:50:49   20   THE COURT:  Well, I think it might be a little more

21   efficient to just provide the Probation Officer with the portion

22   of today's transcript in which you raised this and my response

23   was I think he or she should be a little bit more cautious in

24   the way that they communicate with the Defendant.

:51:08   25   I think leaving a note under circumstances such as you

1    have described or under conditions such as you have described,

2    it could result in your client not even being aware that he has

3    been there are really probably not prudent, and I think he

4    should coordinate a little bit better or certainly come up with

:51:33   5    a better system of, if he wants to do unannounced visits, which

6    is his prerogative --

7              MR. JACOBS:  Sure.

8              THE COURT:  -- he is welcome to do that, then I think

9    he should come up with a system which is a little bit more

:51:47   10   appreciative of the sensitivity of the circumstances and also

11   more foolproof in terms of making sure that he is notified that

12   he actually was there on the premises.

13             So give him a copy of the transcript and hopefully he

14   or she will figure it out.

:52:06   15   MS. MEDEROS-JACOBS:  All right.  Thank you.  Thank you

16   very much. That's all I have.

17             THE COURT:  You are welcome.  Anyone else have

18   anything? Seeing nothing, we will stand in recess.

19             (Whereupon, at 2:58 p.m., the proceedings were

20   concluded.)

21

22

23

24

25

1                          CERTIFICATE OF REPORTER

2

3           I, Patty A. Gels, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9                                  _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25